UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED FINANCIAL CASUALTY COMPANY                                    PLAINTIFF

v.                                              CIVIL ACTION NO. 3:09-cv-198-CRS

YOUTH ALIVE, INC.                                                    DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on a motion of the plaintiff, United Financial Casualty Company ("United Financial") for summary judgment (DN 28) on its claim for declaratory judgment (DN 1). For the reasons set forth below, the motion will be granted.

The facts in this case are undisputed. This action arose out of a car crash which killed four children who participated in a youth event run by defendant, Youth Alive, Inc. ("Youth Alive"). The children had been transported to the event in three vans owned by Youth Alive, which were specifically insured under a commercial auto insurance policy issued by United Financial. Another event participant, 16-year-old Herbert Lee ("Lee"), also traveled to the youth event in a 1991 Honda Accord. After the youth event concluded, Youth Alive was having trouble fitting all the participants into the three vans owned by Youth Alive for transport to their homes. One Youth Alive employee noticed that Lee was driving alone in the Honda and stopped him as he was leaving. She requested that Lee drive four participants, Jemar Claybrooks, Demar Claybrooks, Marc Claybrooks, and Aaron Shields, from the youth event to their homes, located nearby.

Unbeknownst to the Youth Alive employee who requested that Lee drive the four children home, the Honda Accord which Lee was driving had actually been stolen from an individual during

a carjacking and Lee did not have a driver's license. *See* Tiana Middleton's Official Statement (DN 28, Exhibit 2); Uniform Citation (DN 28, Exhibit 4). After Lee drove away with the four children, an officer from the Louisville Metro Police Department observed Lee driving erratically and ran the license plate for the Honda Accord that he was driving. The officer discovered that the Honda Accord had been reported stolen during a carjacking and tried to stop Lee. Lee attempted to evade the police and in doing so, lost control of the vehicle and hit a tree. The four children in the car with Lee were killed. Lee was subsequently charged with and convicted of manslaughter, fleeing or evading the police, receiving stolen property, and operating a motor vehicle without an operator's license. *See* Commonwealth of Kentucky, Jefferson Circuit Court, Criminal Division, Action No. 09CR1095-3, April 2009 (DN 28, Exhibit 5).

After the accident, the estates of the four children brought lawsuits against Youth Alive, alleging that Youth Alive was negligent in placing, or allowing to be placed, the youth event participants in a vehicle with Lee. (DN 28, Exhibit 6). Youth Alive requested that United Financial provide coverage under its commercial automobile insurance policy for the claims by the estates. United Financial filed a Complaint for Declaratory Relief in this court (DN 1) seeking a declaration that it owes no insurance coverage, including defense and indemnity, for any and all claims arising from the accident which resulted in the death of the four children.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the

substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-28, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id*. at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Id*. at 587; *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

Under Kentucky law, an insurance contract must be "liberally construed and all doubts resolved in favor of the insureds." *Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992). The terms used in the insurance policies should be interpreted as they would be by the "average man." *James Graham Brown Found, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1999). However, such liberal interpretations of insurance contract terms are not synonymous with strained ones. *K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 753 (Ky. Ct. App. 2005); *See also Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc*., 82 S.W.3d 869, 873-74 (Ky. 2002) (explaining that the rule of strict construction of insurance policies should not overcome "plain, clear language resulting in a strained or forced construction"); *General Exchange Ins. Corp. v. Kinney*, 129 S.W.2d 1014, 1017 (Ky. 1939) (stating that "unambiguous and clearly drafted exclusions which are not unreasonable are enforceable").

It is not disputed that when the accident occurred, Lee was driving a stolen Honda Accord, which was not specifically insured by United Financial. Youth Alive's policy with United Financial ("the Policy") also does not cover the vehicle. The Policy provides liability coverage for an accident arising out of the use of an "insured auto," an "additional auto," a "replacement auto," or a "temporary auto," as those terms are specifically defined in the policy. (DN 28, Exhibit 5). The Policy provides:

**PART I – LIABILITY TO OTHERS**

**INSURING AGREEMENT – LIABILITY TO OTHERS**

> Subject to the Limits of Liability,...we will pay damages...for bodily injury...for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance or use of an insured auto.

*Id*. at 5. The Policy then defines an "insured auto":

> 5. "Insured auto" or "your insured auto" means:
>
>   a. Any auto specifically described on the Declarations Page, unless you have asked us to delete that auto from the policy.

*Id*. at 4. The only automobiles described on the Declarations Page included (1) a 2003 Ford Econ E350 Super, (2) a 2005 Chevrolet Express G3500 and (3) a 1995 Ford Club Wagon Super. (DN 28, Exhibit 3). The Honda Accord is not specifically listed on the Declarations Page and thus does not fall within the specific definition of an "insured auto" under the Policy.

The Honda Accord driven by Lee also does not fit within the Policy's definitions for an "additional auto," a "replacement auto," or a "temporary auto." The Policy includes any "additional auto" in the definition of an "insured auto" on the date the insured becomes owner if: "(i) you acquire the auto during the policy period shown on the Declarations Page; (ii) we insured all autos owned by you that are used in your business; and (iii) no other insurance policy provides coverage

for that auto." (DN 28, Exhibit 2). The Policy defines its coverage for replacement autos by stating that coverage for a "replacement auto" exists on the day the insured becomes the owner if:

> (i) you acquire the auto during the policy period shown on the Declarations Page;
> (ii) the auto that you acquire replaces one specifically described on the Declarations Page due to mechanical breakdown of, deterioration of, or loss to the replaced auto that renders it permanently inoperable; and
> (iii) no other insurance policy provides coverage for that auto.

(DN 28, Exhibit 5). Neither of these definitions would cover the Honda Accord because Youth Alive never acquired or owned the Honda Accord. Additionally, the Honda Accord cannot constitute a "replacement auto" because the vans that were specifically described in the Policy were fully functional and being used. The vans had not needed replacement because of a "mechanical breakdown" or "deterioration," or because they had suffered such losses that they were "rendered inoperable." Similarly, under the Policy, the Honda Accord could not constitute a "temporary substitute auto." The Policy required a temporary substitute auto to be used "with permission of its owner" and as a substitute for an insured auto that had been "withdrawn from normal use due to breakdown, repair, servicing, or loss or destruction." Therefore, the Honda Accord was not covered under the Policy.

The deaths of the four children also do not constitute injuries arising from the "use" of one of the three Youth Alive vans insured by the United Financial Policy, under the applicable Kentucky law. Kentucky courts "have employed a liberal interpretation to the phrase 'use of an automobile.'" *Martin Cnty. Coal Corp. v. Universal Underwriters Ins. Services, Inc.*, 2010 WL 55926 at *9 (E.D. Ky. Jan. 4, 2010) (quoting *State Farm Mut. Auto. Ins. Co. v. Ky. Sch. Bd. Ins. Trust.*, 851 F.Supp. 835, 837 (E.D. Ky. 1994)). It is not required that the use itself be the proximate cause of the accident, but the "causal connection must be more than incidental." *Id*.

The injuries in this case are not sufficiently connected to the use of the three automobiles covered under the Policy. The seminal Kentucky case on the current "use" test is *Hartford Ins. Cos. of Amer. v. Ky. School Boards*, 17 S.W.3d 525 (Ky. App. 1999). In *Hartford*, a second grader in the Knox County school system was struck by a coal truck and killed as she was crossing the street from her bus stop to her home. *Id*. at 527. She had just exited her school bus and was still under the protection of its flashing lights and extended stop signs. *Id*. When a coverage dispute arose between the School Board's commercial general liability carrier and the Board's auto liability carrier, the Court was asked to determine whether the child's injuries and death arose from the "use" of the school bus. *Id*.

The test provided by the Court for determining the "use" of a motor vehicle was that "[a] party must show that the injury was sufficiently use connected to be considered reasonably within the contemplation of the parties to the automobile insurance contracts involved," and that a "party satisfies this requirement by showing that the injury is reasonably identifiable with the normal use or maintenance of a vehicle and is reasonably foreseeable." *Id*. at 528 (citing *United States Fidelity & Guaranty Co. v. Western Fire Ins. Co.*, 450 S.W.2d 491 (Ky. 1970); *Ky. Farm Bureau Mut. Ins. Co. v. Hall*, 807 S.W.2d 954, 955 (Ky.App. 1991)). Applying the test, the Court held that the causal connection between the child's injuries and the "use" of the school bus was sufficient to trigger automobile insurance coverage, reasoning that "since the bus was waiting with flashing lights and an extended stop sign for the child to reach the other side of the road safely, the bus was still in use under the terms of the motor vehicle insurance policy." *Id*. at 528-29.

Applying this test to the case at hand, it is clear that four children being placed in a separate uninsured vehicle which turned out to be stolen, and was crashed during a police chase, was not

"reasonably within the contemplation of the parties to the automobile insurance contracts involved." The accident involved a separate, uninsured vehicle that did not fall within the coverage laid out in the Policy. The "normal use and maintenance" of the specifically covered vehicles were not sufficiently causally related to the injuries suffered in this case.

The Supreme Court of Kentucky considered a related "use" issue in *State Farm Mut. Auto. Ins. Co. v. Rains*, 715 S.W.2d 232 (Ky. 1986). The Court held that an individual returning to his insured, parked vehicle, and who was attacked from behind while getting into the car, was not entitled to coverage for the injury from his automobile insurance company. *Id*. at 234. The Court found that the causal connection between his injury and the use of the vehicle was not sufficient to establish coverage. *Id.* at 234. The insured individual argued that his injuries were sufficiently related to the use of his insured vehicle because he was injured while entering his vehicle and "he would not have been injured except for the fact that his vehicle was parked at the place it was and that he returned to that place to make use of his vehicle." *Id*. The Court rejected this argument and stated that while he may have been entering his vehicle or returning to it, "[t]his fails to suffice as a showing that his use of his vehicle caused his injury." *Id*. The case dealt with the term "use" in the Motor Vehicle Reparations Act, but the court stated that its interpretation of the statutory language was no different than construing the phrase "arising out of the use of an automobile" in an insurance contract. *Id*. at 233-34; *See also* KRS § 304.39-020(6).

This case is similar, in that the children had been transported to the Youth Alive event in vans specifically covered under the Policy. However, the children's deaths occurred in an accident upon leaving the event in a separate, uninsured automobile. The fact that the children had been

driven to the Youth Alive event in insured vehicles and would not have been there but for the "use" of one of those automobiles, is not a sufficient causal connection in order for coverage to apply.

Youth Alive's policy with United Financial does not provide coverage for the injuries suffered in this case. The Honda Accord in which the children were riding when the accident occurred was not an "insured auto," an "additional auto," a "replacement auto," or a "temporary substitute auto" under the insurance policy, as a matter of law. The deaths of the children also did not arise out of the "use" of an insured vehicle under the applicable Kentucky law. Summary judgment for United Financial is thus proper. An order consistent with this memorandum opinion will be entered this date.

February 10, 2012

**Charles R. Simpson III, Judge**
**United States District Court**